UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ARTHUR L. MITTLER, JR.,                )
                                       )
            Petitioner,                )
                                       )
      vs.                              )      Case No. 4:13 CV 2575 CDP
                                       )
CAROLYN W. COLVIN,                     )
Acting Commissioner of Social Security, )
                                       )
            Respondent.                )

## **MEMORANDUM AND ORDER**

This is an action for judicial review of the Commissioner's decision denying

Arthur Mittler's application for benefits under the Social Security Act.  Mittler

seeks disability benefits under Title II of the Act, 42 U.S.C. §§ 401, *et seq.*, and

supplemental security income (SSI) benefits based on disability under Title XVI of

the Act, 42 U.S.C. §§ 1381, *et seq.*  Section1631(c)(3) of the Social Security Act,

42 U.S.C. § 1383(c)(3), and Section 205(g) of the Act, 42 U.S.C. § 405(g), provide

for judicial review of a final decision of the Commissioner.

At his hearing before the Administrative Law Judge (ALJ), Mittler claimed

that he was disabled because of proliferate retinopathy with macular edema,

impaired vision in his right eye, arthritis with gout, and diabetic neuropathy.

Although the ALJ found that Mittler's impairments are severe and impose a more

than minimal limitation on his ability to perform work-related activities, she ruled

that Mittler was not disabled.  On appeal, Mittler raises two issues.  First, he claims the ALJ failed to correctly follow the treating physician rule by failing to give proper weight to the opinions of the treating physicians.  Second, he claims that the ALJ failed to properly evaluate his credibility.  Because I find that the decision denying benefits was supported by substantial evidence, I will affirm the decision.

## I. Procedural History

Mittler filed for both Disability Insurance benefits and for Supplemental Security Income on May 25, 2010, alleging disability as of February 1, 2009.  (Tr. 151-60).  The Social Security Administration denied his claims on October 19, 2010, and he filed a request for a hearing by an Administrative Law Judge (ALJ) on December 11, 2010.  (Tr. 99-107, 110-11).[1]  An ALJ held a hearing on March 19, 2012, at which Mittler testified. (Tr. 32-58).  A vocational expert also testified. (Tr. 58-77).  The ALJ denied Mittler's claim on July 19, 2012.  (Tr. 8-25).  On October 28, 2013, the Appeals Council denied Mittler's request for review.  (Tr. 1-7).  Thus, the decision of the ALJ stands as the final determination of the Commissioner.

---

[1] Missouri is one of the several states participating in modifications of the disability determination procedures applicable to this case.  *See* 20 C.F.R. §§ 404.906, 404.966, 416.1406, 416.1466 (2001).  These modifications include the elimination of the reconsideration step and, in some cases, the Appeals Council review step in the administrative appeals process. *See id.* Therefore, plaintiff's appeal in this case proceeded directly from the initial denial to the ALJ level.

In the instant action for judicial review, Mittler contends that the ALJ committed legal error by failing to follow the treating physician rule and by failing to properly evaluate Mittler's credibility. Mittler requests that the final decision be reversed and that he be awarded benefits, or that the matter be remanded for further consideration. For the following reasons, the decision of the ALJ will be affirmed.

## II. Evidence Before the Administrative Law Judge

In his application for benefits, Mittler stated that he was born in 1963 and was 45 years old on the alleged disability on set date. (Tr. 151). He claims that because of his various impairments he been disabled and unable to work since February 1, 2009. (Tr. 151). He has a high school education. (Tr. 188). Mittler reported previous employments as a sunroom/deck installer and an independent claims adjustor. (Tr. 188).

In his Disability Report, Mittler claimed that lower back arthritis, diabetes, proliferate retinopathy (macular adema), neuropathy in hands and feet, blindness in right eye, high blood pressure, and high cholesterol limit his work ability. (Tr. 187). He ceased working February 1, 2009, the alleged date of disability onset. (Tr. 151, 187). The Disability Report interviewer noted that "claimant did display some difficulty sitting down and getting up once seated." (Tr. 184).

In Mittler's Function Report, he stated that he gets his son up for school, helps his daughter dress and eat, watches his daughter during the day, and helps

prepare dinner.  (Tr. 198).  He reported inability to stand or sit for long periods of time and difficulty holding or grasping objects.  (Tr. 199).  Pain in his feet and legs affect his sleep.  (Tr. 199).  Mittler can prepare simple meals like sandwiches and frozen food.  (Tr. 200).  He can leave the house alone and still drives.  (Tr. 201). Mittler also shops for groceries, hygiene products, and clothes (Tr. 201).   He can pay bills, count change, handle a savings account, and use a checkbook.  (Tr. 201). His ability to handle money has not changed since the conditions began.  (Tr. 202). Mittler visits his family for birthdays and holidays.  (Tr. 202).  However, he cannot watch television for long periods of time due to his eye problems and can no longer play sports.  (Tr. 202-03).   He does not handle stress well and has bouts of anxiety. (Tr. 204).  Mittler claims that his conditions affect lifting, squatting, bending, standing, walking, sitting, kneeling, stair climbing, seeing, and using his hands. (Tr. 203).  Sitting for a long period of time causes his legs to go numb and back pain starts.  (Tr. 205).  Mittler can no longer lift heavy objects.  (Tr. 205).  Pain and numbness affect his feet and legs after walking for a distance.  (Tr. 205).  He also can only stand for short periods of time before his feet and legs go numb and tingle.  (Tr. 205).

At the hearing before the ALJ, Mittler testified to having vision problems when he focuses on an object, like a computer or a book for too long.  (Tr. 32).  He has trouble focusing after fifteen minutes.  (Tr. 54).  Although he had surgery to

restore sight to his right eye, his vision is still blurry. (Tr. 33). He experiences floaters in his left eye. (Tr. 34). His quality of vision fluctuates from day to day with his blood sugar. (Tr. 54-55). He also reports having problems with depth perception but little to no peripheral vision difficulties. (Tr. 57). Light sensitivity has also been an issue for him, especially when going from light to dark. (Tr. 58).

Mittler reports a stiff lower back with a pain level of seven out of ten but has not sought treatment. (Tr. 35, 39, 48). More specifically, his back starts to hurt after two to three hours of sitting. (Tr. 48). He takes Advil or the like to control his pain. (Tr. 48).

His cholesterol is not controlled because he stopped taking his medication. (Tr. 39-41). Mittler testified that he cannot exercise due to the neuropathy in his feet, and that the neuropathy keeps him from standing more than twenty minutes at a time. (Tr. 40, 45). He says that after thirty minutes, his leg will go almost completely numb on his left side. (Tr. 45). He has trouble with balance because he cannot feel the outsides of his feet and parts of his toes. (Tr. 45). When sitting, not only does his back hurt, but his hands and arms go numb; the left side is worse than the right. (Tr. 47).

Mittler is right handed but still reports difficulty writing and typing on a computer. (Tr. 50). He constantly needs to switch activities, stating ability to use fine manipulation skills for only fifteen minutes at a time. (Tr. 50-51). He also

reports difficulty gripping objects and because of sensation issues in his fingers, he drops a lot of things. (Tr. 53-54).

Mittler can lift fifty pounds at once and can lift lighter weights routinely and repeatedly without dropping them (Tr. 51-52). Mittler also reports three to four gout flare-ups per year. (Tr. 43).

### III. Medical Records

One of the earliest medical records is dated July 6, 2009 and indicates that Mittler received medical treatment through Gateway Endocrinology. (Tr. 249). Dr. Jerry Thurman found Mittler's blood sugar level above average. *Id.* In March, 2010, Mittler again visited Dr. Thurman's office. (Tr. 252). Although his blood sugars were uncontrolled, he appeared alert and "in no distress." (Tr. 253-54). Mittler was diagnosed with Type 2 Diabetes Mellitus and reported some tingling and decreased distal sensation. (Tr. 256). His medications included Glucophage, Crestor, insulin, Accupril, and Amaryl. (Tr. 256-57).

On February 19, 2010, Mittler had his first appointment with Dr. Olk at the Retina Center. (Tr. 303). On March 11, 2010, Mittler underwent photocoagulation surgery on both his eyes. (Tr. 315). On March 25, 2010, Mittler then underwent vitrectomy surgery with membrane peeling and supplemental endophotocoagulation on his right eye. (Tr. 313). Neither surgery had any complications. (Tr. 313, 315). Mittler completed follow-up appointments May 14,

2010, July 16, 2010, April 14, 2011, April 28, 2011and May 13, 2011.  (Tr. 269, 305, 394, 396, 398).  On June 16, 2011, Mittler underwent photocoagulations to both eyes.  (Tr. 470).  Again, no complications ensued.  *Id.*

On June 18, 2010, Mittler went to St. Johns Mercy Medical center, under emergency circumstances, with pain and swelling in his left ankle.  (Tr. 286).  The medical record states that ankle pain was a new problem.  (Tr. 287).  Mittler "complain[ed] of pain to the calf and radiation up into his upper leg.  He [felt]that his leg [was] mildly swollen."  *Id.* The report states that Mittler did not have a history of "anything like this before."  *Id.*  Sensation and circulation were intact to his left foot.  (Tr. 289).  Mittler was prescribed hydrocodone-acetaminophen and indomethacin.  (Tr. 286).

On July 26, 2010, Mittler was examined by Dr. Samer Thanavaro.  (Tr. 382).  Mittler's blood sugar was still uncontrolled, and he was not checking his blood sugars or exercising as much.  (Tr. 382-83).   Although the report found distal sensation diminished, Mittler was again "alert, well appearing, and in no distress" despite reported foot numbness and pain.  (Tr. 383, 385).  The report also found Mittler "with good mental function and without memory (sic) deficits."  (Tr. 382).

On November 6, 2010, Mittler visited Dr. Daniel Kramer.  (Tr. 373).  Mittler complained of peripheral neuropathy and left hand neuropathy.  *Id.*  Dr. Kramer

diagnosed hypertension, hyperlipidemia, diabetes mellitus without complication, obesity, painful diabetes mellitus neuropathy, and a back problem. (Tr. 376).

On January 26, 2011, Mittler was examined by Dr. Thurman. At that visit, Mittler complained of foot numbness and pain, but he denied blurred vision/visual disturbances. (Tr. 367). Dr. Thurman found Mittler's general appearance again to be "alert, well appearing, and in no distress." (Tr. 369). Further, although Mittler's diabetes mellitus was still poorly controlled, Dr. Thurman found Mittler's distal sensation intact. (Tr. 369-70).

On July 25, 2011, Mittler visited Dr. Kramer. (Tr. 440). Dr. Kramer diagnosed Mittler with diabetes mellitus with neurological manifestation, hypertension, diabetes mellitus neuropathy, a back problem, and controlled diabetes retinopathy. *Id.*

On November 2, 2011, Mittler visited Dr. Thurman. (Tr. 492). Dr. Thurman noted that "[h]is blood sugars have been uncontrolled" and "[h]e checks his blood sugars never." *Id.* Mittler reported foot numbness/pain. (Tr. 493). Dr. Thurman noted that Mittler "had a retinal hemorrhage last week and has been untreated." *Id.*

On December 2, 2011, Mittler followed up with Dr. Kramer. (Tr. 437). As Mittler was without health insurance and worried about money, he was given samples of medications. (Tr. 436-37).

On March 27, 2012, an EMG/NCV of Mittler revealed abnormal NCV (nerve conduction velocity) in all four extremities, which is consistent with moderately severe sensori-motor polyneuropathy. (Tr. 474). The EMG result for all four extremities was normal. *Id.*

On March 28, 2012, Mittler visited Dr. Thurman's office. (Tr. 488). At this appointment, he complained of polyuria/polydipsia, chest pains/shortness of breath, foot numbness/pain, and blurred vision/visual disturbances. *Id.* He was found to have distal sensation diminished and needed a nerve conduction study. (Tr. 491-92).

## IV. Legal Standard

A court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001). Substantial evidence is less than a preponderance, but is enough so that a reasonable mind would find it adequate to support the ALJ's conclusion. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). As long as there is substantial evidence on the record as a whole to support the Commissioner's decision, a court may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, *id.*, or because the court would have decided the case differently. *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992). In determining whether existing evidence is

substantial, a court considers "evidence that detracts from the Commissioner's decision as well as evidence that supports it."  *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000) (quoting *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir.  1999)).

To determine whether the decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and consider:

(1) the credibility findings made by the Administrative Law Judge;
(2) the education, background, work history, and age of the claimant;
(3) the medical evidence from treating and consulting physicians;
(4) the plaintiff's subjective complaints relating to exertional and non-exertional impairments;
(5) any corroboration by third parties of the plaintiff's impairments; and
(6) the testimony of vocational experts, when required, which is based upon a proper hypothetical question.

*Brand v. Secretary of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

Disability is defined in social security regulations as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  § 42 U.S.C. 416(i)(1); §42 U.S.C. 1382c(a)(3)(A); § 20 C.F.R. 404.1505(a); § 20 C.F.R. 416.905(a).  In determining whether a claimant is disabled, the Commissioner must evaluate the claim using a five step procedure.

First, the Commissioner must decide if the claimant is engaging in substantial gainful activity. If the claimant is engaging in substantial gainful activity, he is not disabled.

Next, the Commissioner determines if the claimant has a severe impairment which significantly limits the claimant's physical or mental ability to do basic work activities. If the claimant's impairment is not severe, his is not disabled.

If the claimant has a severe impairment, the Commissioner evaluates whether the impairment meets or exceeds a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment satisfies a listing in Appendix 1, the Commissioner will find the claimant disabled.

If the Commissioner cannot make a decision based on the claimant's current work activity or on medical facts alone, and the claimant has a severe impairment, the Commissioner reviews whether the claimant can perform his past relevant work. If the claimant can perform his past relevant work, he is not disabled.

If the claimant cannot perform his past relevant work, the Commissioner must evaluate whether the claimant can perform other work in the national economy. If not, the Commissioner declares the claimant disabled. § 20 C.F.R. 404.1520; § 20 C.F.R. 416.920.

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the plaintiff, even if it is

uncorroborated by objective medical evidence.  *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984).  The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole.  *See e.g., Battles v. Sullivan*, 902 F.2d 657, 660 (8th Cir. 1990).  In considering the subjective complaints, the ALJ is required to consider the factors set out by *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), which include:

> claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
> (1) the objective medical evidence;
> (2) the subjective evidence of the duration, frequency, and intensity of plaintiff's pain;
> (3) any precipitating or aggravating factors;
> (4) the claimant's daily activities;
> (5) the dosage, effectiveness and side effects of any medication; and
> (6) the claimant's functional restrictions.

*Id.* at 1322.  When an ALJ explicitly finds that the claimant's testimony is not credible and gives good reasons for the findings, the court will usually defer to the ALJ's finding.  *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007).  However, the ALJ retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding.  *Hildebrand v. Barnhart*, 302 F.3d 836, 838 (8th Cir. 2002).

## V. The ALJ's Findings

The ALJ found that Mittler does not suffer from a disability within the meaning of the Social Security Act at any time through the date of the decision. She issued the following specific findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013. (Tr. 13).

2. The claimant has not engaged in substantial gainful activity since February 1, 2009, the alleged onset date. 20 C.F.R. 404.1571 *et seq.*, 416.971 *et seq.* (Tr. 13).

3. The claimant has the following severe impairments: proliferative retinopathy with macular edema, impaired vision in his right eye, arthritis with gout, diabetic neuropathy and obesity. 20 C.F.R. 404.1520(c) and 416.920(c). (Tr. 13).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. 404.1520(d), 404.1526, 416.920(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. (Tr. 14).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except that he would have a sit/stand option every two hours. The claimant should never climb ropes, ladders or scaffolds but is able to occasionally climb ramps and stairs. The claimant is limited to frequent bilateral handling, fingering and feeling. The work should require no depth perception and the environment should provide a fairly constant light level. (Tr. 15).

6. The claimant is unable to perform any past relevant work. 20 C.F.R. 404.1565, 416.965. (Tr. 19).

7.  The claimant was born on October 5, 1963 and was 45 years old, which is defined as a younger individual's age 45-49, on the alleged disability onset date.  20 C.F.R. 404.1563, 416.963.  (Tr. 19).

8.  The claimant has at least a high school education and is able to communicate in English.  20 C.F.R. 404.1564, 416.964.  (Tr. 19).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).  (Tr. 19).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569, 404.1569(a), 416.969, and 416.969(a)).  (Tr. 19).

11. The claimant has not been under a disability, as defined by the Social Security Act, from February 1, 2009, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).  (Tr. 20).

The ALJ concluded that, the Miller is not disabled under sections 216(i) and 223(d) of the Social Security Act.  Further, the ALJ found that Miller is not disabled under section 1614(a)(3)(A) of the Social Security Act and therefore not eligible for supplemental security income.

## VI. Discussion

When reviewing a denial of Social Security benefits, a court cannot reverse an ALJ's decision simply because the court may have reached a different outcome, or because substantial evidence might support a different outcome.  *Jones ex rel Morris . Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).  Instead, the court's task is a

narrow one: to determine whether there is substantial evidence on the record as a whole to support the ALJ's decision.  42 U.S.C. §405(g); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).  On appeal, Mittler raises two issues.  First, he claims the ALJ failed to give proper weight to the opinions of the treating physicians.  Second, he claims that the ALJ failed to properly evaluate his credibility.  Because I find that the decision denying benefits to be supported by substantial evidence, I will affirm the decision.

Weight Given to Treating Physicians

Mittler claims that the ALJ failed to properly consider the evidence offered by Dr. Olk, Kramer and Thurman.  More specifically, Mittler contends that the ALJ gave too great of deference to other evidence.

When considering professionals' opinions, the ALJ must defer to a treating physician's opinions about the nature and severity of a claimant's impairments, "including symptoms, diagnosis, and prognosis, what an applicant is capable of doing despite the impairment, and the resulting restrictions."  *Ellis v. Barnhart*, 392 F.3d 988, 995 (8th Cir. 2005).  A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998).  While a treating physician's

opinion is usually entitled to great weight, the Eighth Circuit has cautioned that it does not automatically control, since the record must be evaluated as a whole. The Eighth Circuit has upheld an ALJ's decision to discount or disregard the opinion of a treating physician in situations where other medical assessments are supported by better or more thorough medical evidence or where a treating physician gives inconsistent opinions that undermine the credibility of the opinions. *Prosch v. Apfel*, 201 F.3d at 1013 (quoting *Rogers v. Chater*, 118 F.3d 600, 602 (8th Cir. 1997)). In any event, whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations require the ALJ to always give good reasons for the particular weight the ALJ chooses to give. *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000).

In this case, the ALJ considered the opinions of Dr. Kramer, Dr. Thurman, and Dr. Olk and determined that Mittler "has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)." (Tr. 15). The ALJ did not give the physicians' testimony controlling weight because Mittler's "treatment records and the record as a whole, including testimony and activities of daily living, do not support the substantial postural limitations suggested by [Dr. Thurman and Dr. Krammer.] (Tr. 18). *See Halverson v. Astrue*, f.3d 922, 930 (8th Cir. 2010) ("If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.")

Further the ALJ's determination in Mittler's case is supported by "some medical evidence" in the record. *See Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001).

Dr. Kramer's and Dr. Thurman's opinions in their multiple impairment questionnaires and their medical reports support some medical evidence that support the ALJ's finding with regard to Mittler's residual functional capacity. Dr. Thurman reported Mittler's prognosis to be "fair" rather than poor. (Tr. 404). He reported that Mittler would be capable of lifting and carrying ten pounds occasionally. (Tr. 404-05). Further, as recently as January 26, 2011, Dr. Thurman found Mittler's distal sensation to be intact. (Tr. 369-70).

Moreover, while Dr. Kramer gave Mittler a "poor" prognosis and stated that Mittler was unable to work eight hours, he still reported that Mittler would be able to sit for five hours per day and stand for two hours in an eight hour day as well as being capable of occasionally lifting and carrying over fifty pounds. (Tr. 420, 422-23, 25). Further, although Dr. Kramer's testimony states that Mittler experiences severe pain, a 9 on a 10-point scale, Mittler only testified to a "level of about a seven out of ten," simply taking Advil to manage the pain. (Tr. 48, 425). Dr. Kramer also stated that the limitations and symptoms to which he testified about in the multiple impairment questionnaire only applied from January 2010, while Mittler claims disability since February 1, 2009 and supplies no medical record prior to July 6, 2009. (Tr. 13, 249, 426).

Dr. Olk has only been treating Mittler since February 2010, although again, Mittler claims disability from February 2009. (Tr. 13, 409). Dr. Olk completed a vision impairment questionnaire. (Tr. 409). In the questionnaire, he reports that Mittler's pain or other symptoms would only seldom interfere with his attention and concentration. (Tr. 413). Mittler corroborates this fact in his Social Security Administration Function Report. (Tr. 203).

Acknowledging the testimony by Dr. Olk, Dr. Kramer, and Dr. Thurman, the ALJ weighed their opinions against each other, the other medical evidence and the objective evidence, including Plaintiff's daily activities, describing Mittler's limitations. *See McDade v. Astrue*, 720 F.3d 994, 998 (8th Cir. 2013) (considering the claimant's ability to conduct daily activities). Thus, given the evidence on the record, the ALJ's conclusion concerning Mittler's treating physicians was supported by substantial evidence.

Claimant's Credibility

Mittler next claims that the ALJ improperly evaluated his credibility. Since evidence of pain is subjective in nature, an ALJ "cannot simply reject complaints of pain because they were not supported by objective medical evidence." *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008). Instead, the ALJ is required to consider all evidence relating to the complaints. *Id.* Under the framework set forth in

*Polaski*, an ALJ must consider the following factors when evaluating a claimant's

credibility:

> (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints.

*Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011). An ALJ is not required to

explicitly discuss each *Polaski* factor. *Id.* Further, an ALJ cannot discount a

claimant's allegations of pain based solely on a lack of objective medical evidence

to support them, but may find a lack of credibility based on inconsistencies in the

evidence as a whole. *Id.* The "credibility of a claimant's subjective testimony is

primarily for the ALJ to decide, not the courts." *Moore v. Astrue*, 572 F.3d 520,

525 (8th Cir. 2009) (quoting *Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir.

2001)). Consequently, courts should defer to the ALJ's credibility finding when the

ALJ explicitly discredits a claimant's testimony and gives good reason to do so.

*Buckner*, 646 F.3d at 558.

Primarily, the ALJ stated that Mitler's allegations regarding his physical

impairments are not entirely supported by the medical record, noting numerous

discrepancies in Mittler's complaints in the medical records. (Tr. 16-18). The ALJ

also referred to the claimant's daily activities: "the claimant noted that he

maintains his personal care, helps care for his children, prepares his own meals,

washes dishes . . ." (Tr. 18).  *See McDade*, 720 F.3d at 998.  Further, the ALJ

observed Mittler's behavior at the hearing.  *See Steed v. Astrue*, 524 F.3d 872, 876

(8th Cir. 2008) (holding that an ALJ "is in the best position" to assess credibility

because she is able to observe the claimant during his testimony).  Although the

ALJ did find Mittler's work history consistent (*See Woolf v. Shalala*, 3 F.3d 1210,

1214 (8th Cir. 1993) (noting that a poor work record lessens a claimant's

credibility)), the ALJ did note that Mittler is not managing his pain with anything

other than the occasional Advil.  (Tr. 17).  This Circuit has noted that "the ALJ [is]

not required to discuss methodically each *Polaski* consideration, so long as [she]

acknowledged and examined those considerations before discounting [Mittler]'s

subjective complaints.  *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (citing

*Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996).  Thus, as the ALJ's examined

and considered the *Polaski* criteria and found that Mittler's subjective complaints

were not fully credible when considering the record as a whole, her finding

concerning Mittler's credibility should stand.

## VII.  Conclusion

For the foregoing reasons, the ALJ's decision is supported by substantial

evidence on the record as a whole.  As substantial evidence exists to support the

ALJ's decision, this court may not reverse merely because substantial evidence

exists in the record that would have supported the contrary outcome or because

another court could have decided the case differently.  *Gowell v. Apfel*, 242 F.3d 793,796 (8th Cir. 2001).

Accordingly, the judgment of the ALJ, denying the claimant benefits is affirmed.

**IT IS HEREBY ORDERED** that the decision of the Commissioner is affirmed.  A separate judgment in accordance with this Memorandum and Order is entered this same date.


_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 6th day of February, 2015.